UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **DEBRA VARNADO AND HER CHILDREN, SYTANIAL VARNADO, JR., DOROTHY VARNADO AND KENYADA VARNADO** | **CIVIL ACTION** |
| **VERSUS** | |
| **CASE CORPORATION AND CRAWLER SUPPLY COMPANY, INC.** | **NO. 06-787-B-M2** |

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 10 days from the date of service of this Notice to file written objections to the proposed findings of fact and conclusions of law set forth in the Magistrate Judge's Report. The failure of a party to file written objections to the proposed findings, conclusions, and recommendation contained in a Magistrate Judge's Report and Recommendation within 10 days after being served with a copy of the Report shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge that have been accepted by the District Court.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE**

**WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in chambers in Baton Rouge, Louisiana, January 18, 2007.

_____

**MAGISTRATE JUDGE CHRISTINE NOLAND**

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

**DEBRA VARNADO AND HER**  CIVIL ACTION
**CHILDREN, SYTANIAL VARNADO, JR.,**
**DOROTHY VARNADO AND**
**KENYADA VARNADO**

**VERSUS**
NO. 06-787-B-M2

**CASE CORPORATION AND**
**CRAWLER SUPPLY COMPANY, INC.**

## MAGISTRATE JUDGE'S REPORT

This matter is before the Court on the Motion to Remand (R. Doc. 6) filed by plaintiffs, Debra Varnado and her children, Sytanial Varnado, Jr., Dorothy Varnado, and Kenyada Varnado (collectively "plaintiffs"). Defendant, Case Corporation ("Case"), has filed an opposition to this motion. (R. Doc. 13).

## FACTS & PROCEDURAL HISTORY

In September 2006, plaintiffs filed this lawsuit against Case and Crawler Supply Company, Inc. ("Crawler Supply") in the 19th Judicial District Court, Parish of East Baton Rouge, Louisiana. In the petition for damages, plaintiffs allege that, on October 3, 2005, Sytanial Varnado, Sr. ("Mr. Varnado"), was performing hurricane debris removal work for his employer. A Case Model 580M loader backhoe was being used to remove debris from the roadside and was left unoccupied and running by another worker. Mr. Varnado walked to the backhoe and placed a 5 gallon water cooler on it. The cooler fell onto the backhoe swing controls, causing the boom to swing around and strike Mr. Varnado, pinning and crushing him against the backhoe and resulting in severe injuries and his subsequent death.

2

Plaintiffs allege that Case is the manufacturer of the backhoe, and that it is liable under the Louisiana Products Liability Act ("LPLA"), La. R.S. 9:2800.51, *et seq.,* because it failed to provide an adequate warning regarding unreasonably dangerous characteristics of the backhoe of which Case was aware at the time it left Case's control, and because the backhoe was unreasonably dangerous in design, composition and/or construction, in that it either lacked and/or had inadequate safety devices.[1]  As to Crawler Supply, plaintiffs allege that it "performed inspections, testing, maintenance and repairs" on the backhoe which it owned and leased to Mr. Varnado's employer and therefore "knew or should have known that the backhoe possessed defective conditions" and "failed to warn of those defects and/or correct or eliminate those defects."  Specifically, plaintiffs contend that Crawler Supply knew or should have known that the backhoe did not have a switch and/or safety device which would render the boom and/or pedals inoperable when the seat was not facing the boom and/or when the operator was not in the seat.  They assert that, as the owner of the backhoe, Crawler Supply is liable for such fault and negligence pursuant to La. C.C. art. 2315, 2316, and 2317 and other Louisiana laws.

---

[1] Specifically, plaintiffs allege that Case is liable because it manufactured a product which was defective in design, in that it:

(1) Failed to have a switch and/or safety device which would render the boom and/or pedals for the boom inoperable when the seat was not facing the boom; and

(2) Failed to have a switch and/or safety device which would render the boom and/or pedals for the boom inoperable when the operator was not in the seat.

*See,* Petition for Wrongful Death and Survival Action, ¶¶ 22-23, 25-28.

3

On October 10, 2006, Case removed the suit to this Court on the ground that diversity jurisdiction exists because the non-diverse defendant, Crawler Supply, was improperly or fraudulently joined in this matter. Plaintiffs have now filed the present motion to remand, seeking to have this matter remanded to state court because they have a viable claim against Crawler Supply, and complete diversity of citizenship therefore does not exist in this case.

## **LAW & ANALYSIS**

The removing party carries a heavy burden when attempting to prove fraudulent joinder. *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002). If there is arguably a reasonable basis for predicting that state law might impose liability on the facts involved, there is no fraudulent joinder. *Travis v. Irby*, 326 F.3d 644, 648 (5th Cir. 2003).[2] In determining whether there is an arguably reasonable basis for the plaintiffs' claims, a district court must resolve any contested issues of material fact and any ambiguity or uncertainty in the controlling state law in the plaintiffs' favor. *Griggs v. State Farm Lloyds*, 181 F.3d 694, 699 (5th Cir. 1999). If there is any possibility the plaintiffs have stated a cause of action against any non-diverse defendant, the court must conclude that joinder is proper, thereby defeating diversity and requiring the case to be remanded. *Sid Richardson Carbon & Gasoline Co. v. Interenergy Resources, Ltd.*, 99 F.3d 746, 751 (5th Cir. 1996).

---

[2] This does not mean that any mere theoretical possibility of recovery, no matter how remote or fanciful, prevents removal. *Badon v. RJR Nabisco Inc.*, 236 F.3d 282, 286, n. 4. To preclude a finding of fraudulent joinder, the basis for recovery must at least be arguably reasonable. *Id.*

The Fifth Circuit Court of Appeal has recognized that a court may determine whether a plaintiff has a reasonable basis of recovery under state law in one of two ways. *Smallwood v. Illinois Cent. R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004).  A court may conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations in the complaint to determine whether the complaint states a claim under state law against the in-state defendant.[3]  Ordinarily, if a plaintiff can survive a Rule 12(b)(6) challenge, improper joinder does not exist.  However, there are cases, where a plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder, and in such cases, the court may, in its discretion, pierce the pleadings and conduct a summary inquiry by examining outside evidence.[4]  *Id.*; McDonal *v. Abbott Laboratories*, 2005 WL 957142, * 4, n. 6 (5th Cir. 2005).  A court may examine affidavits, evidence, and deposition testimony to determine whether the plaintiff has a reasonable basis of recovery against the non-diverse defendants.  *McLin v. H & H Lure Co.*, 102 F. Supp. 341, 343 (M.D. La. 2000).

In the state court petition in this matter, plaintiffs have made conclusory allegations of a claim in negligence and/or strict liability against Crawler Supply.  However, Case suggests that plaintiffs have omitted discrete facts which are necessary to a determination of whether Crawler Supply's joinder was proper.  The Court agrees and will therefore

---

[3] When reviewing a motion pursuant to Fed. R. Civ. P. 12(b)(6), a court "must accept all well pleaded averments as true and view them in the light most favorable to the plaintiff. [The court] will not go outside the pleadings and . . . cannot uphold the dismissal 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his [or her] claim which would entitle him [or her] to relief." *Hernandez v. Maxwell*, 905 F.2d 94, 96 (5th Cir. 1990).

[4] Under a summary judgment-type inquiry, a court is to "pierce the pleadings to determine whether, under controlling state law, the non-moving party has a valid claim against the non-diverse parties." *Hornbuckle v. State Farm Lloyds*, 385 F.3d 538, 542 (5th Cir. 2004).

proceed beyond an examination of the allegations in the petition and to a review of any summary judgment-type evidence presented by the parties.

Case first contends that Crawler Supply is a "seller" within the meaning of the LPLA, and as such, it is not liable for damages in tort absent a showing that it knew or should have known the product was defective and failed to declare it. The Court agrees that Crawler Supply should be considered a "seller" under the LPLA since a "seller" under that Act includes any "person or entity who is not a manufacturer and who is in the business of conveying title to or possession of a product to another person or entity in exchange for anything of value." La. R.S. 9:2800.53. Crawler Supply is the owner and lessor of the backhoe at issue, and it leased the backhoe to Mr. Varnado's employer for use in removing debris in exchange for a price. *See*, Affidavit of Danny Cloy, attached as Exhibit A to Case's opposition.[5]

In addition, Louisiana law is clear that a non-manufacturing seller of an allegedly defective product is not responsible for damages in tort unless the seller had "actual or constructive knowledge that the product was defective and failed to warn of the defects." *Slaid v. Evergreen Indem., Ltd.*, 32-363 (La. App. 2 Cir. 10/27/99) 745 So.2d 793; *Jackson v. Sears Authorized Retail Dealer Store*, 36,166 (La. App. 2 Cir. 6/12/02), 821 So.2d 590,

---

[5] In their memorandum in support of their motion to remand, plaintiffs assert that Crawler Supply should not be considered a "seller" for purposes of the LPLA, relying upon *Black v. Gorman-Rupp*, 94-1494 (La. App. 4 Cir. 5/16/95), 655 So.2d 717. However, that case does not involve any discussion as to whether the lessor of the defective product, a pump in that case, could be considered a non-manufacturing "seller" under the LPLA, as such an argument was not asserted in that case. Instead, the court in *Black* simply noted that the lessor was not the "manufacturer" of the pump and was not subject to the LPLA under that theory. Accordingly, the Court declines to rely upon *Black* as support for the proposition that Crawler Supply cannot be considered a non-manufacturing "seller" for purposes of the LPLA.

593.[6]  Accordingly, in order for plaintiffs to recover against Crawler Supply in this matter, they must be able to prove that Crawler Supply knew or should have known that the backhoe was defective and failed to warn of the defects.  Conversely, to prove improper joinder, Case must produce sufficient summary judgment-type evidence indicating that plaintiffs do not have a reasonable possibility of recovery on such a claim.

The knowledge requirement imposes a reasonable duty upon the owner of a product to discover "apparent defects" in things under its control.  *Hagood v. Brakefield*, 35,570 (La. App. 2 Cir. 1/23/02), 805 So.2d 1230, 1233.[7]  In other words, a non-manufacturing seller/lessor, such as Crawler Supply in this case, has no duty to inspect or test a product for "inherent design vices or defects" over which it has no control or responsibility, and unlike a manufacturer, is not presumed to have knowledge of any such defects.  *Slaid v. Evergreen Indem., Ltd.*, 32,363 (La. App. 2 Cir. 10/27/99), 745 So.2d 793; *Jackson v. Sears Authorized Retail Dealer Store*, 36, 166 (La. App. 2 Cir. 6/12/02), 821 So.2d 590,

---

[6] *See also, Nelton v. Astro-Lounger Mfg. Co., Inc.,* 542 So.2d 128 (La. App. 1 Cir. 1989)(Tort liability for a defective product attaches to a non-manufacturer seller who does not vouch for the product by holding it out as his own and who is not a professional vendor or merchant "only if he knew or should have known that the product sold was defective, and failed to declare it."  A "professional vendor," for purposes of imposing manufacturer liability for a defective product, is a retailer who does more than simply sell (or lease) certain product(s); it must engage in practices whereby it is capable of controlling the quality of the product, such that courts are justified in treating it like a manufacturer).

*See also, Harris v. Atlanta Stove Works, Inc.*, 428 So.2d 1040, 1043 (La. App. 1st Cir.), *writ denied,* 434 So.2d 1106 (La. 1983); *General Accident Insurance Co. of America v. Gillespie Lumbar & Supply Co.*, 527 So.2d 1092 (La. App. 1 Cir. 1988); *Picolo v. Flex-A-Bed, Inc.*, 466 So.2d 652 (La. App. 5th Cir.), *writ denied,* 467 So.2d 1134 (La. 1985); *Hopper v. Crown*, 555 So.2d 46 (La. App. 1 Cir. 1989).

[7] *Thomasson v. A.K. Durnin Chrysler-Plymouth, Inc.*, 399 So.2d 1205 (La. App. 1 Cir. 1981)(Seller of a dangerously defective product owes only a duty of "reasonable inspection" and is not required to search for "latent, nonapparent defects").

593; *Parks ex rel. Parks v. Baby Fair Imports, Inc.*, 98-626 (La. App. 5 Cir. 12/16/98), 726 So.2d 62, 64.  Hence, where the defect in a product is not "readily apparent," a non-manufacturing seller cannot be found liable for failing to discover it.  *Ferruzzi, U.S.A., Inc. v. R.J. Tricon Co., Inc.*, 93-1591 (La. App. 4 Cir. 9/29/94), 645 So.2d 685, 688.  Whether a defect is "readily apparent" or "inherent" is a factual determination to be made by the Court upon examination of the summary judgment-type evidence presented herein.  *Picolo v. Flex-A-Bed, Inc.*, 466 So.2d 652, 654 (La. App. 5 Cir. 1985)(Whether the defect is obvious or apparent is a factual determination, and to grant a motion for summary judgment, there must be no material issue of fact as to the defect complained of).

In determining whether an alleged defect is "readily apparent" or "inherent" and whether or not a non-manufacturing seller has actual/constructive knowledge of it, courts have considered various factors, including whether the product malfunctioned on occasions prior to the accident; the extent to which the product was previously used; whether the owner had influence or control over the product's design, construction or composition; whether the defect was visibly apparent; whether the owner repaired the product prior to the accident, either properly or improperly; and whether the owner was made aware of the need for repairs to the product and either failed to have them performed or failed to warn the buyer/lessee that such repairs had not been performed.[8]

---

[8] *See, Hagood v. Brakefield*, 35,570 (La. App. 2 Cir. 1/23/02), 805 So.2d 1230, 1234 (holding that plaintiff presented sufficient evidence that the owner of a chainsaw had constructive knowledge of defect, where expert affidavit indicated that the propensity of the chain to continue running intermittently when engine was idling was observable to the naked eye and where owner testified that he freely allowed many people to use or borrow the equipment and, from those people, he learned that the chainsaw had mechanical problems); *Picolo*, at 654 (Defective weld in bed was held to be non-apparent and non-discoverable by a lay person because it was only later discovered after having magnified the weld thirty times normal vision, and the facia attached to the bed's structure tended to conceal the welds from

view); *Nelton*, at 131-132 (Non-manufacturer seller of sofa bed who did not hold out sofa bed as its own was not liable to party injured by allegedly defective sofa bed; seller's employees were not aware nor should they have been aware of defect since the sofa bed received from the manufacturer did not leave the carton in which it was packaged while in the seller's possession, and the seller was not required to inspect the sofa bed).

  *See also, Thomasson*, at 1208 (Notice from manufacturer that type of vehicle sold to plaintiffs was suspect, specific complaints from owners regarding problems with steering of vehicle, ease of discovery, and opportunity to correct and the magnitude of the risk should have incited seller of automobile to proceed beyond routine inspection or repair in case of the plaintiff's vehicle, and seller was therefore solidarily liable with manufacturer for damages caused by failure of front suspension lower control arms); *Weber v. Caterpillar Machinery Corp.*, 542 So.2d 544 (La. App. 5 Cir. 1989)(No evidence indicated that the forklift seller was aware of prior accidents or of a possibility that the buyer would remove the doors from the cab of the forklift, and thus, seller was not liable for accident); *Lewis v. Albertson's Inc.*, 41,234 (La. App. 2 Cir. 6/28/06), 935 So.2d 771, 774 (Retailer of lawn chair was not liable for customer's injuries caused by collapse of chair; store's assistant manager did not notice any defects in the chair when he helped with the display, he watched a co-worker sit in the display chairs after putting them together, and nothing indicated that the retailer knew or should have known of the alleged defect); *Bush v. XYZ Ins. Co.*, 38, 867 (La. App. 2 Cir. 2004), 880 So.2d 953 (Store was held not to be responsible for injuries sustained by a patron when he sat in a chair in the store because there was no evidence that the store employees knew or should have known of the defective weld in the chair; occasional loose screws in the chair's armrest alone were not enough to give sufficient warning to the store's employees that the chair as a whole was defective, the employees found no evidence of structural problems with the chair, and there was no way the employees would have known of the defect in the weld supporting the seat unless they hired a metallurgist to inspect the chair).

  *See also, Barnes v. Riverwood Apartments Partnership*, 38, 331 (La. App. 2 Cir. 4/7/04), 870 So.2d 490 (Genuine issues of fact as to landlord's negligence precluded entry of summary judgment in tenant's action against landlord for injuries tenant received when he stepped into hole in grassy area of common area of apartment complex; evidence indicated that landlord was aware of similar holes or drainage issues on property and that the area was prone to drainage problems and sink holes); *Saulny v. Tricou House, L.L.C.*, 2002-1424 (La. App. 4 Cir. 1/29/03), 839 So.2d 392 (Restaurant was held responsible for injuries that a patron sustained when the leg of her chair bent, causing her to fall to the ground and injure her ankle, where the chairs used by the restaurant would often break and have to be replaced and the restaurant had used the chairs for at least two years prior to the patron's accident and several of the chairs had broken during that time); *Griffin v. Weingarden*, 1999-1394 (La. App. 4 Cir. 1/26/00), 752 So.2d 308 (holding that landlord knew or should have known that potentially dangerous defects existed in property, where landlord had been to property numerous times, had personally made some minor repairs, and admitted that there were holes in the ceiling that had been caused by "previous" water damage); *Moody v. Blanchard Place Apartments*, 34,587 (La. App. 2 Cir. 6/20/01), 793 So.2d 281 (Apartment complex either knew or should have known about unreasonably dangerous condition of electric stove that shocked tenant because evidence indicated that complex did not hire qualified technicians to maintain electrical appliances on their premises and that monthly inspections had revealed the improper use of electrical tape to

As discussed above, in the present case, plaintiffs have alleged "defects" in the design, construction and/or composition of the backhoe at issue, in that the backhoe either lacked and/or had inadequate safety devices and characteristics. As evidence that the defects in question are "inherent" in nature and beyond the actual or constructive knowledge of Crawler Supply, Case has submitted the Affidavit of Danny Cloy ("Cloy"), the President of Crawler Supply. *See*, Exhibit A to Case's opposition. In that affidavit, Cloy attests to the following facts:

(1) that the backhoe in question was shipped to it new by Case on March 31, 2005;

(2) that at the time Crawler Supply took possession of the machine, all of its backhoe boom, boom controls and seat were fully installed;

(3) that none of those items were the subject of any pre-accident repair work by Crawler Supply;

(4) that neither Crawler Supply nor any of its employees or agents have any influence or input into the design or manufacture of any backhoe or backhoe component part manufactured by Case;

(5) that Mr. Varnado's employer, Stevens Dirt Hauling and Concrete ("Stevens"), took possession of the backhoe in question from Crawler Supply on September 13, 2005 in exchange for an agreed upon payment;

(6) that Crawlers Supply delivered the backhoe to Stevens with all warnings provided by Case and with the Operator's Manual that accompanied the machine when Crawler Supply first acquired it;

---

repair wires).

(7)    that Crawler Supply did not remove or alter in any way the warnings or Operator's Manual provided with the backhoe;

(8)    that, prior to the accident in question, Crawler Supply did not have any knowledge concerning any alleged design defects involving the backhoe's boom, boom controls, and/or operator's seat;

(9)    that, prior to the subject accident, neither Crawlers Supply nor any of its agents or employees observed any defect in the machine's boom, boom controls, and/or operator's seat;

(10)   that, prior to the subject accident, Crawler Supply did not receive notification from any source of any design defect in the backhoe's boom, boom controls, and/or operator seat;

(11)   that Crawler Supply is unaware of any recalls or field campaigns involving the backhoe's boom, boom controls, and/or operator's seat and that it never modified, nor was it ever requested to modify, the design of the boom, boom controls, and/or operator's seat;

(12)   that Crawler Supply was never requested by any person or entity to attempt to modify the backhoe either to prevent the boom from functioning when the operator's seat was not facing the boom or to prevent the boom from functioning when the operator was not in the seat; and

(13)   That Crawler Supply is not in the business of designing or manufacturing backhoes and has no control or influence over the design of backhoes that it leases to the public.

*Id.*

Considering the factors discussed in the jurisprudence in light of the information contained in Cloy's affidavit, it appears that the defects alleged by the plaintiffs herein are "inherent" in nature and that Crawler Supply did not have actual knowledge nor should it have had constructive knowledge of the alleged defects in the backhoe. As a non-manufacturing lessor with no control over the design, manufacture or assembly of the backhoe in question, Crawler Supply could only be potentially liable if it was aware of prior

mechanical problems with the backhoe, if it previously repaired or modified the equipment, and/or was aware of the need for repairs and failed to have them performed. While plaintiffs have alleged in a conclusory fashion that Crawler Supply "tested, maintained, and repaired" the backhoe, "knew or should have known of defective conditions" in the backhoe, and "failed to warn of those defects and/or to correct or eliminate them," they have failed to present any competent summary judgment-type evidence substantiating those allegations and refuting the affidavit of Cloy, which indicates that such allegations lack merit.[9]

Finally, Case has also presented evidence indicating that, at the time Crawler Supply delivered the backhoe for use by Mr. Varnado's employer, it supplied his employer with all the same warnings that Crawler Supply received when it purchased the equipment from Case, specifically the Operator's Manual and all decals on the machine itself. Case has submitted copies of relevant portions of the Operator's Manual, which specifically warn that improper use of the backhoe can result in death or serious injury; that before operating the machine, the Operator's Manual and ALL Safety Decals are to be read and the area of use should be cleared of all persons; that the operator of the backhoe should be alert and always know the location of all workers in the area and keep other persons "completely away from [the] machine;" that machine controls should only be operated from the operator's seat; and that, when parking the machine and before leaving the operator's area,

---

[9] Furthermore, plaintiffs have not even alleged, much less presented summary judgment-type proof, that the backhoe in question ever previously malfunctioned and/or that Crawler Supply had repair work performed on the backhoe prior to the accident at issue.

all attachments (loader, backhoe, etc.) should be supported or lowered to the ground, the parking brake should be applied, the machine stopped, and the keys removed.

The safety instructions produced by Case also specifically warn persons not to place themselves in the boom's swing danger area, an area which is depicted in a diagram within the machine's warnings, and the area where, according to the plaintiffs' allegations, Mr. Varnado was standing at the time of the accident. Based upon this additional evidence, it appears that, even if the backhoe was unreasonably dangerous in design, as plaintiffs allege, Crawler Supply nevertheless provided all the warnings it knew of by providing all of the warnings it received from the manufacturer, some of which specifically address precautions that could have been taken to avoid the accident at issue. Accordingly, the Court finds that there is not an arguably reasonable basis for predicting that state law might impose liability upon Crawler Supply based upon the facts involved in this case. Crawler Supply was therefore improperly joined in this matter, and plaintiffs' motion to remand should be denied.

## RECOMMENDATION

For the above reasons, it is recommended that the Motion to Remand (R. Doc. 6) filed by plaintiffs, Debra Varnado and her children, Sytanial Varnado, Jr., Dorothy Varnado, and Kenyada Varnado, be **DENIED** and that the presence of the non-diverse defendant, Crawler Supply, Inc., be ignored for purposes of diversity jurisdiction.

Signed in chambers in Baton Rouge, Louisiana, January 18, 2007.

**MAGISTRATE JUDGE CHRISTINE NOLAND**